```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMEL ASH,                                          :
                                                    :
                        Petitioner,                 :
                                                    :
            v.                                      :       MEMORANDUM & ORDER
                                                    :       21-CV-4214 (WFK)
MARK J. MILLER, Superintendent,                     :
Green Haven Correctional Facility,                  :
                                                    :
                        Respondent.                 :
                                                    :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

Jamel Ash ("Petitioner") brings this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (the "Petition"), challenging his conviction for felony-murder. ECF No. 1. For the following reasons, the Petition is DENIED.

## BACKGROUND

### I. The Offense, Bench Trial, and Sentencing

On the morning of April 4, 2010, at approximately 7:00 A.M., Lucius Battle, a twenty-three year old man, was returning home from a party he attended the previous evening. Resp. Opp. at 1-2, ECF No. 12. Battle first accompanied a friend to her home before proceeding alone toward the elevated New Lots Avenue train station in Brooklyn, New York. *Id.* Shortly thereafter, Jamel Ash ("Petitioner") emerged from a vehicle and approached Battle while displaying a black handgun. *Id.* Petitioner proceeded to rob Battle of his cellphone, wallet, keys, and MP3 player before fleeing the scene. *Id.* at 2.

Immediately following the robbery, Battle ran up the stairs to the mezzanine level of the New Lots Avenue train station, where he approached Lynn McAllister, an MTA transit clerk operator, and requested entrance to the train station without paying. R. at A55. After Ms. McAllister refused him entry, Battle informed her he had just been robbed and had no money, but that he needed to return home. *Id.* Ms. McAllister still refused. *Id.* Several minutes later,

1

Battle returned to the station with a female whose identity remains unknown. *Id.* This individual swiped both herself and Battle into the train station and she later informed Ms. McAllister Battle looked unwell. *Id.* at A56. Ms. McAllister called for medical assistance and left her booth to assist Battle. Resp. Opp. at 5. Battle told Ms. McAllister he had a heart murmur, and reiterated he had been robbed and wanted to go home. R. at A56. Battle also provided Ms. McAllister with his name and age, as well as the contact information for his mother. Resp. Opp. at 5. Ms. McAllister called Battle's mother, who confirmed he had a heart condition. *Id.* The fire department and emergency medical services arrived at the train station shortly thereafter to find Battle slumped on a bench and breathing heavily. *Id.* at 6. Battle suffered a seizure and cardiac arrest while being treated by first responders. R. at A505. Ultimately, Battle was taken to the hospital where he was pronounced dead. *Id.*

Investigators located Petitioner two days later by tracking Battle's cellphone, which Petitioner had been using since the robbery. *Id.* Petitioner admitted he had taken Battle's phone, but denied possessing a gun during the robbery. *Id.* Petitioner was subsequently charged under Kings County Indictment Number 2989/2010 on three counts: (1) felony-murder, with robbery as the underlying felony pursuant to N.Y. Penal Law §125.25(3); (2) robbery in the first degree (display of apparent handgun) pursuant to N.Y. Penal Law § 160.15(4); and (3) robbery in the third degree (forcible taking) pursuant N.Y. Penal Law §160.05. Petition at 11.

In May 2012, Petitioner was tried by bench trial before the Honorable Justice Danny K. Chun of the Supreme Court of New York, Kings County. *Id.* On May 21, 2012, Judge Chun found Petitioner guilty of felony murder and robbery in the first degree. R. at A1. On August 8, 2012, the court sentenced Petitioner to a term of imprisonment of fifteen years to life for the

felony murder conviction and to a concurrent term of imprisonment of fifteen years for his first-degree robbery conviction, followed by a term of five years of post-release supervision. *Id.*

**II. Post-Conviction Activity**

On May 15, 2017, Petitioner filed a motion to vacate the judgment of conviction on the second-degree homicide count pursuant to New York Criminal Procedure Law § 440.10 on the grounds he was provided ineffective assistance of counsel under both *Strickland v. Washington*, 466 U.S. 668 (1984) and the New York State constitution (the "440 Motion"). *Id.* at A292-A355. Petitioner's 440 Motion was assigned to Judge Chun, the same judge who presided over Petitioner's May 2012 bench trial and subsequent sentencing. *Id.* at A1. The trial court denied the 440 Motion on March 30, 2018 ("the 440 Decision"). *Id.* at A1-A7. The trial court agreed Petitioner's trial counsel's failure to assert a foreseeability defense fell below the objective standard of reasonableness. R. at A4; *People v. Ash*, 2018 WL 7891738, at *2-*3 (N.Y. Sup. Ct. Kings Cnty. Mar. 30, 2018) (Chun, J.). However, Judge Chun nevertheless denied Petitioner's motion on the grounds Petitioner failed to establish he was prejudiced by his counsel's failure in this regard. R. at A5. Furthermore, the court found the evidence was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt. *Id.*

On May 2, 2018, Petitioner filed an application for leave to appeal the trial court's denial of his 440 Motion before the New York Supreme Court, Appellate Division, Second Department. *Id.* at A401-418. On July 2, 2018, the Second Department denied Petitioner's application. *Id.* at A421. On July 31, 2018, Petitioner moved to reargue his application for leave to appeal the denial of his 440 Motion, which the Appellate Division subsequently denied on September 17, 2018. *Id.* at A437.

On December 20, 2018, Petitioner filed an appeal in the Appellate Division, Second Department, arguing (1) the State did not prove the victim's death was reasonably foreseeable and (2) Petitioner was denied effective assistance of trial counsel due to his counsel's failure to raise the issue of the foreseeability. *Id.* at A475-491. On October 23, 2019, the Second Department unanimously affirmed Petitioner's conviction in its entirety. *People v. Ash*, 176 A.D.3d 1090 (2d Dep't 2019). In so doing, the Second Department held the evidence was legally sufficient as to foreseeability and the trial court's verdict was not against the weight of the evidence. R. at 599-600. Finally, the Second Department rejected Petitioner's ineffective assistance of counsel claims. *Id.* at 600.

On November 20, 2019, Petitioner applied for leave to appeal the Second Department's denial of his ineffectiveness claims to the New York State Court of Appeals, which was subsequently denied on June 4, 2020. *Id.* at A601-610; *see People v. Ash*, 35 N.Y.3d 1025 (June 4, 2020).

On July 27, 2021, Petitioner filed the instant petition pursuant to 28 U.S.C. § 2254, seeking a writ of *habeas corpus*. *See* Petition, ECF No. 1.

**DISCUSSION**

The Court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. This statute "authorizes a federal court to grant a writ only where a state holds a petitioner in its custody in violation of 'the Constitution or laws or treaties of the United States.'" *Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011) (quoting 28 U.S.C. § 2254(a)). In accordance with AEDPA, when a petitioner's claims have been rejected on the merits by a state court, the reviewing court "may grant [a] writ [of habeas corpus] only if that decision 'was contrary to, or involved an unreasonable application of, clearly

4

established Federal law, as determined by the Supreme Court of the United States' or if the decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Judicial review under the "unreasonable application" prong is "extremely deferential," and a "'state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.'" *Id.* (quoting *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015)).

The instant Petition arises from Petitioner's counsel's failure to raise a foreseeability defense to the felony murder charge during Petitioner's May 2012 bench trial before Judge Chun. *See generally* Pet. Br. As he did on appeal, Petitioner again argues his trial counsel failed to raise a defense that was "very strong and very obvious," and thus this failure constitutes ineffective assistance of counsel. Pet. Br. at 27. Moreover, Petitioner claims the trial judge's denial of relief "due to a purported lack of prejudice" was erroneous. *Id.* at 9.

To prove ineffective assistance of counsel, a petitioner must show (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In evaluating the first prong of the two-part *Strickland* analysis, "[j]udicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). As for the second prong, a petitioner must show the defective performance was prejudicial, meaning "but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To establish the prejudice prong, merely a "reasonable probability" is "sufficient to undermine confidence in the outcome." *Id.*

The *Strickland* standard is a rigorous one. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington*, 562 U.S. at 104 (internal citation and quotation marks omitted). Rather, counsel's errors must be "so serious as to deprive [the defendant] of a fair trial, a trial whose result is reliable." *Id.* "The Second Circuit generally 'requires some objective evidence other than defendant's assertions to establish prejudice.'" *Cameron v. Cunningham*, 13-CV-5872, 2014 WL 1259672, at *8 (S.D.N.Y. Mar. 27, 2014) (Gorenstein, M.J.), *report and recommendation adopted*, 13-CV-5872, 2014 WL 4449794 (S.D.N.Y. Sept. 9, 2014) (Failla, J.) (citing *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003)).

To establish a defendant's guilt of felony murder under New York law, the prosecution must show, "in the course of committing a robbery, the defendant caused the death of the victim, which further require[s] proof, inter alia, that 'the fatal result was reasonably foreseeable.'" *See People v. Gobardhan*, 56 N.Y.S.3d 118, 119 (2017) (citation omitted); *see also People v. Hernandez*, 82 N.Y.2d 309, 313-14 (1993) ("[H]omicide is properly charged when the defendant's culpable act is 'a sufficiently direct cause' of the death so that the fatal result was reasonably foreseeable."). Thus, at Petitioner's May 2012 bench trial, the prosecution was required to prove (1) Petitioner's conduct was an "actual contributory cause of the death (factual causation)" and (2) "the death was a reasonably foreseeable result of the conduct" (legal causation). R. at 7; CJI2d[NY] Penal Law art 125, Causation.

Petitioner's trial counsel did not raise the foreseeability requirement at any point during the bench trial. As he later stipulated, trial counsel "presented his defense *exclusively* as to factual causation" and "[a]t no time during the multi-day trial did defense counsel raise the issue of whether Battle's death" was "reasonably foreseeable" to Petitioner. R. at 8. Neither party disputes this fact. In his 440 Motion, Petitioner argues this omission constituted deficient performance because "the foreseeability requirement was well-established in New York law by the time of the 2012 trial; prevailing case law demonstrated there was, at the least, a very strong foreseeability argument available to [Petitioner]; and there was no plausible strategic or tactical reason to explain why defense counsel could not or should not have made the People prove both foreseeability and factual causation." Pet Br. at 18. Indeed, Petitioner submitted a sworn affidavit from his trial counsel, in which trial counsel admits his omission was not a strategic choice, but merely the product of his ignorance on the issue. R. at A315-16 ("My failure to raise this issue at trial was not a choice made for strategic reasons. Until I spoke with [Petitioner's] current counsel and reviewed the relevant authorities, I was unaware of this requirement. Had I been aware of the legal requirement of reasonable foreseeability, I undoubtedly would have argued at trial that the victim's death was not reasonably foreseeable to [Petitioner].").

In light of the obviousness of this defense, combined with trial counsel's admissions, the trial court determined "trial counsel's performance in this regard fell below an objective standard of reasonableness." R. at A3-A4. Thus, the trial court found the first prong of *Strickland* was fulfilled. Respondent does not dispute this conclusion. *See generally* Resp. Br.; Pet. Br. at 34 ("The lack of dispute over *Strickland's* performance prong is appropriate.").

However, while the trial court agreed with Petitioner as to the unreasonableness of his trial counsel in omitting the foreseeability defense, it was unconvinced by Petitioner's argument

7

that he was prejudiced by this failure. R. at A4. Specifically, the trial court found "there was no prejudice to the defendant because there is no reasonable probability that the outcome of the case would have been different had the counsel raised this issue." *Id.* Respondent agrees with this determination, and continues to argue Petitioner was not prejudiced by the performance of his trial counsel. On the other hand, Petitioner continues to assert "[t]here was at least a reasonable probability of a different outcome, but for counsel's error." Pet. Br. at 36.

Thus, the central question remains whether trial counsel's failure to raise a foreseeability defense impacted the outcome of Petitioner's May 2012 bench trial. In his decision on Petitioner's 440 Motion, Judge Chun explained Petitioner was not prejudiced by the failings of his trial counsel because "in deciding the defendant's verdict, this court was aware of and did apply both the actual causation and the reasonable foreseeability requirements in accordance with precedent and the Criminal Jury Instructions." R. at A6. In so doing, Judge Chun emphasized the difference between bench and jury trials. R. at A6. Namely, Judge Chun identified that in contrast to a lay jury, a judge "'is uniquely capable of distinguishing the issues and making an objective determination' based upon appropriate legal criteria." R. at A6 (citations omitted). Judge Chun also presented as evidence of his consideration of foreseeability during the bench trial two cases in which foreseeability is discussed: *People v. Stewart*, 40 N.Y.2d 692 (1976) and *People v. Kibbe*, 35 N.Y.2d 407 (1974). R. at A7. In *Kibbe*, the New York Court of Appeals held "to be a sufficiently direct cause of death so as to warrant the imposition of a criminal penalty therefore, it's not necessary that the ultimate harm be intended by the actor. It will suffice if it can be said beyond a reasonable doubt…that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused." R. at A7 (citing 35 N.Y.2d at 412). Ultimately, Judge Chun reasoned because he was

independently aware of the reasonable foreseeability standard, and applied it to Petitioner's case, "there is no reasonable probability that the outcome of the case would have been different had defense counsel raised this issue." *Id.* at A7. Therefore, Judge Chun concluded Petitioner was not prejudiced by his trial counsel's error. *Id.*

The crux of Petitioner's argument is that Judge Chun's conclusion regarding prejudice was "clearly wrong." Pet. Br. at 34. Petitioner claims the foreseeability defense applied to his case considering the circumstances of the case and the identity of the victim. *Id.* Namely, Petitioner emphasizes Battle's young age—twenty-three years old at the time of his death—and outward appearance of health. *Id.* As Petitioner notes, Battle's mother even testified at trial that, although Battle "had been diagnosed with his congenital heart condition as a teenager, he lived a normal, active life." *Id.* (citing R. at A130-35). Thus, Petitioner argues, while Battle's death was a "terrible tragedy," "it was also a freak outcome that was not reasonably foreseeable, certainly not to someone in Petitioner's shoes, knowing only what Petitioner knew." *Id.* Petitioner labels Judge Chun's decision "error-ridden" and claims his decision applied a subjective prejudice standard rather than an objective one and is therefore contrary to *Strickland* and an unreasonable application of the same. *Id.* at 37-48.

In contrast, Respondent argues the trial court's prejudice analysis was neither contrary to *Strickland* nor an unreasonable application of the Supreme Court's holding therein. Resp. Br. at 35. As Judge Chun mentioned in his 440 Decision, so too does Respondent point to the trial court's *Kibbe* reference in its verdict as evidence "the court considered the issue of foreseeability *sua sponte.*" *Id.* at 36. Indeed, Respondent argues the trial court's consideration of foreseeability should be assumed based on the unique "learning, experience and judicial discipline" of a judge. *Id.* According to Respondent, the trial court's decision denying

9

Petitioner's 440 Motion, in which Judge Chun confirms his consideration of legal precedent and criminal jury instructions, which Respondent argues would have included the relevant information on foreseeability, further evinces the trial court carefully considered the foreseeability issue. *Id.* at 37.

Having weighed the parties' competing arguments, the Court finds in Respondent's favor and concludes the trial judge's findings were neither contrary to, nor an unreasonable application of, *Strickland*.

### I. Petitioner was not Prejudiced by Trial Counsel's Omission

"The United States Supreme Court has determined that *Strickland v. Washington*, 466 U.S. 668 (1984), qualifies as 'clearly established law' for purposes of reviewing ineffective assistance claims under AEDPA." *Peters v. Graham*, 13-CV-06222, 2017 WL 2797915, at *2 (W.D.N.Y. June 28, 2017) (Telesca, J). At this stage, the Court must determine whether the trial court unreasonably applied *Strickland* to Petitioner's case. *See Harrington*, 562 U.S. at 101. In *Harrington*, the Supreme Court described the extremely high bar set by *Strickland* in conjunction with § 2254(d): "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (citations omitted); *see also Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland's* high bar is never an easy task.").

Petitioner argues the trial court's post-conviction decision that Petitioner was not prejudiced was contrary to and an unreasonable application of *Strickland* because it erroneously applied a subjective, rather than objective, prejudice analysis. Pet. Br. at 37. As previously described, Judge Chun ruled trial counsel's omission of the foreseeability defense did not

10

prejudice Petitioner because the Judge himself was aware of the actual causation and reasonable foreseeability requirements, and applied these requirements when deciding the Petitioner's verdict. R. at 6. Petitioner claims this ruling was a "*post-hoc* opinion of a fact-finder" and thus "irrelevant to a *Strickland* prejudice inquiry." Pet. Br. at 38. Petitioner argues further the proper inquiry was "whether there was a reasonable probability that the attorney's omission affected the decision of a hypothetical, objective judge—*not the particular trial judge that presided.*" *Id.* Petitioner also points to the following language from *Hill v. Lockhart* as evidence of this framework: "the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" 472 U.S. 52 (1985) (citing *Strickland*, 466 U.S. at 695).

Respondent claims Petitioner misinterprets *Strickland*. Respondent argues "[Petitioner] relies upon an out-of-context quote from *Strickland*" and "[a] more complete excerpt of the portion of the *Strickland* decision quoted in *Lockhart* shows that [*Strickland*] supports this Court giving weight to the [trial] court's explanation of what it considered in convicting [Petitioner] of felony murder in [his] case." Resp. Br. at 41. According to Respondent, *Strickland* and its progeny permit trial courts to consider the "actual process of decision" as "part of the record of the proceedings under review." *Id.* at 42. Respondent contends, therefore, that the trial court's "statement in its 440 [D]ecision that it had weighed the foreseeability issue *sua sponte* in deliberating about [Petitioner's] guilt should indeed be considered by the Court in determining whether [Petitioner] had established *Strickland's* prejudice prong." *Id.*

This court agrees. In *Strickland*, the Supreme Court explained: "[a] defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker

11

is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Strickland* at 695. In short, the assumption of an "objective" decisionmaker refers to the exclusion of "the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Id.* The Supreme Court went on to suggest that while "evidence about the actual process of decision," such as "a particular judge's sentencing practices," should not be considered, evidence that is "part of the record of the proceeding under review" may be. *Id.*

Respondent's interpretation of *Strickland* is consistent with case law from the Second Circuit, in which the appellate court has repeatedly found the objective analysis directive contemplated by *Strickland* refers to weighing the strength of the evidence at trial. In *Garner v. Lee*, for example, the Second Circuit concluded a district court erred in determining a petitioner satisfied *Strickland*'s prejudice prong because of the strength of the evidence presented against the petitioner at trial. *Garner v. Lee*, 908 F.3d 845 (2d Cir. 2018). In so doing, the Circuit discussed the meaning and implications of *Lockhart*'s admonitions regarding objective prejudice analysis. *Id.* at 862. The Circuit clarified because the prejudice inquiry under *Strickland* is objective, it is "ineluctably tied to the strength of the prosecution's evidence" and therefore "[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Id.* (citing *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001); *see also Schrock v. Kirkpatrick*, 16-CV-6364, 2019 WL 8807887, at *12 (W.D.N.Y. Mar. 27, 2019) (Siragusa, J.).

Respondent's understanding is further supported by this Circuit's precedent to the extent courts have consistently recognized inherent differences between jury and bench trials in the

12

context of *Strickland* prejudice analyses, and have expressly found the risk of prejudice is far lesser in the latter. *See, e.g., Moore v. Chapplus*, 16-CV-6400, 2017 WL 59083, at *4 (E.D.N.Y. Jan. 5, 2017) (Cogan, J.) ("[I]t must be remembered that this case was tried to the court, not a jury. This reduces petitioner's argument to a contention that an experienced trial judge was unduly prejudiced by petitioner's use of offensive language and could not properly separate from that the probative value of seeking to arrange the murder of the tipsters as to his consciousness of guilt, a dubious contention."); *BIC Corp. v. Far E. Source Corp.*, 23 F. App'x 36, 39 (2d Cir. 2001) ("[T]he admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis."); *Steinhilber v. Kirkpatrick, M.*, 18-CV-1251, 2020 WL 9074808, at *25 (S.D.N.Y. Aug. 21, 2020) (McCarthy, M.J.), *report and recommendation adopted sub nom. Steinhilber v. Kirkpatrick*, 18-CV-1251, 2021 WL 1254554 (S.D.N.Y. Apr. 5, 2021) (Briccetti, J.) ("[T]rial counsel's decision 'was all the more reasonable because the trial was not before a jury but rather before a judge who, as an experienced finder of fact, would understand why the defense would choose not to make such a statement.'") (citing *Armatullo v. Taylor*, 04-CV-5357, 2005 WL 2386093, at *12 (S.D.N.Y. Sept. 28, 2005) (Gorenstein, M.J.)); *Carrino v. Lee*, 21-CV-5909, 2023 WL 4304799, at *11 (S.D.N.Y. Jan. 31, 2023) (Davison, M.J.), *report and recommendation adopted sub nom. Carrino v. Eckert*, 21-CV-5909, 2023 WL 4296182 (S.D.N.Y. June 30, 2023) (Briccetti, J.) ("Given that this was a bench trial, the potential for prejudice is minimal.") (citing *Steinhilber*, 2020 WL 9074808 at *14).

Furthermore, contrary to Petitioner's position on this issue, courts routinely consider the subjective knowledge of the relevant factfinder when analyzing this issue. In the context of bench trials, specifically, courts in this Circuit have rejected ineffective assistance claims based

13

on a lack of prejudice because of the unique understanding of a case by a particular judge. For example, *Dunham v. Travis*, 313 F.3d 724 (2d Cir. 2002) is particularly instructive here.

In *Dunham*, a petitioner challenged his conviction following a bench trial on the grounds he received ineffective assistance of counsel because his trial counsel failed to impeach the victim with her earlier statements. 313 F.3d at 732. The Circuit rejected this claim in part because it found the trial counsel's decision "fell within the wide range of acceptable professional assistance" and thus the performance prong was not satisfied. *Id.* However, the Circuit went on to qualify that the petitioner's arguments failed nevertheless because he suffered no prejudice from the error. *Id.* The Circuit explained "[t]he state judge, sitting as factfinder, convicted Dunham while admitting to some doubts about Desio's testimony. He did this based on his conclusion that the physical and scientific evidence 'exclude beyond a reasonable doubt every hypothesis but guilt.' Because the state judge expressly convicted Dunham despite doubts about Desio's credibility, there is no 'reasonable probability' that further impeachment of her credibility would have changed the verdict." *Id.* (citing *Strickland*, 466 U.S. at 694). Notably, as Respondent argues presently, the Circuit found evidence of the lack of prejudice in the form of a 440 decision subsequently decided by the same judge who presided over the bench trial, in which the trial judge reasoned he was "unmoved by one of the allegedly inconsistent statements when it was raised in the § 440 motion before him." *Id.*

Ultimately, this Court determines the expertise and awareness of the presiding judge in the context of a bench trial are relevant for the purposes of establishing *Strickland* prejudice. *Corbett v. United States*, 15-CV-1461, 2019 WL 4758340, at *7 (D. Conn. Sept. 30, 2019) (Chatigny, J.) (rejecting a petitioner's claim that he was prejudiced by his trial counsel's failure to interview a witness because the presiding trial judge "was well aware of the potential flaws in

14

relying too heavily on [the] out-of-court testimony, *both through his judicial experience* and through counsel's submission objecting to the testimony.") (emphasis added).

In his 440 Decision, Judge Chun identified the inherent and pertinent differences between the effect of prejudice in cases decided by a judge rather than a lay jury, which, as the aforementioned cases have explained, is relevant for the Court to consider. R. at 7. Judge Chun confirmed he was aware of the reasonable foreseeability standard, cited the applicable, seminal cases on the issue, and certified that he considered the standard in determining Petitioner's guilt. *Id.* Similarly to the Second Circuit in *Dunham*, this Court finds the expertise and knowledge Judge Chun exhibited at trial, combined with the evidence he took into consideration regarding this issue, as evinced in his 440 Decision, are relevant to the Court's instant prejudice analysis.

Moreover, it is well established that in the context of bench trials, trial court judges are presumed to make decisions "based upon appropriate legal criteria." *Zuniga v. Lamana*, 18-CV-5717, 2019 WL 4124416, at *9 (S.D.N.Y. Aug. 30, 2019) (Cott, M.J.) (citation omitted). Affording consideration to Judge Chun's statements in this case is consistent with this presumption, contrary to Petitioner's suggestion that the statements made by the trial court on this matter are unreliable especially considering the fact Judge Chun did not explicitly identify the foreseeability issue upon announcing his verdict. Pet. Br. at 34-36. However, as Respondent identifies, courts are not required to provide a full accounting of the legal principles upon which they rely when announcing a verdict. *People v. Amakye*, 118 N.Y.S.3d 362 (N.Y. App. Term. 2019). Regardless, while the trial court did not reference the foreseeability issue explicitly, the Court finds its reference to the seminal cases on this issue constitute sufficient evidence of its consideration of the matter. The trial court's acknowledgement of the foreseeability standard, combined with the ubiquity of the defense in the New York criminal law and the associated jury

15

instructions, are sufficient to assure this Court there was a reasonable basis for the trial court to find Petitioner did not demonstrate *Strickland* prejudice.

## CONCLUSION

The Petition is DENIED in its entirety for the foregoing reasons. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to Petitioner and to close this case.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 5, 2023
      Brooklyn, New York